# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| Calvin White, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action File No.: |
| Atlanta Independent School System d/b/a Atlanta Public Schools, | : | _____ |
| Defendant. | : | **JURY TRIAL REQUESTED** |

## COMPLAINT

COMES NOW, Calvin White ("Plaintiff" or "White"), by and through his undersigned counsel, hereby files this Complaint against Defendant Atlanta Independent School System d/b/a Atlanta Public Schools ("Defendant" or "APS"), showing the Court as follows:

### JURISDICTION AND VENUE

1.

This is an action for: (1) discrimination based on sex in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e et seq. ("Title VII"); and (2) retaliation for engaging in conduct protected under Title VII and Section 1981.

2.

The jurisdiction of this Court is invoked pursuant to Title VII, 42 U.S.C. § 1983, 29 U.S.C. § 2611, 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

3.

The unlawful employment practices alleged in this Complaint were committed within the Northern District of Georgia.

4.

Venue is proper in this Court under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), as the acts of which Plaintiff complains occurred in the Atlanta Division of the United States District Court for the Northern District of Georgia.

5.

All of Defendant's discriminatory and retaliatory conduct described herein was accomplished pursuant to official policy and custom of APS, or committed or authorized by officials whose acts can be fairly deemed to be the actions of APS.

**PARTIES**

6.

Plaintiff, a black male, was at all times relevant to this action a citizen of the United States entitled to bring an action of this type and nature. He resides in the State of Georgia.

7.

Defendant Atlanta Independent School System is a domestic government corporation registered to transact business in the state of Georgia. The Defendant may be served with process by serving its main office at: Atlanta Public Schools, 130 Trinity Avenue SW, Atlanta, Georgia 30303.

8.

Plaintiff is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

9.

The Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

10.

Defendant has more than five hundred (500) employees.

11.

All of the conduct alleged herein occurred under color of state and local law, pursuant to the policy, custom and usage of the Defendant, and/or was accomplished with the approval, ratification, or condoning of Defendant's officials who possessed final policy-making and decision-making authority with regard to the actions complained of herein.

## ADMINISTRAIVE PROCEDURES

12.

Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 12, 2021.

13.

The EEOC issued a "Notice of Right to Sue" on March 31, 2021, entitling an action to be commenced within ninety (90) days of receipt of that notice.

14.

Plaintiff has brought suit within ninety (90) days of receipt of the Notice of Right to Sue, a copy of which is attached hereto as Exhibit "**A**."

## FACTUAL ALLEGATIONS

15.

Plaintiff, a black male, began his employment with Atlanta Public Schools, Transportation Division, on February 5, 2020, as a Field Trip Driver. However, Plaintiff did not commence work until August 3, 2020, due to the Covid-19 pandemic. Plaintiff's primary

responsibilities included driving school age children to various locations as directed by his employer.

16.

Prior to his employment with APS, Plaintiff had approximately twenty (20) years experience as a Driver.

17.

Louisa Johnson ("Johnson"), a manager in the Transportation Department of APS, and Ms. Toombs ("Toombs"), a Night Trip Advisor, served as Plaintiff's immediate supervisors.

18.

Plaintiff began work with APS in the thick of the Covid-19 pandemic. Thus, at the beginning of his employment most of his communications with his superiors were through email and text.

19.

For the first month, almost all of Plaintiff's communication regarding his assignments, routes and other directives were communicated to him by Dara Robinson ("Robinson") – the assistant to Johnson.

20.

Plaintiff had no direct conversation with Johnson or Toombs until or about late October 2020.

21.

Shortly after his initial contact with Johnson, Johnson and Toombs began sending repetitive, unnecessary, and harassing messages to Plaintiff's personal cell phone – a violation of APS's communication policy.

22.

The messages sent were not only harassing in their repetitiveness, but they were often sent before Plaintiff's shift started, or worse, when Plaintiff was operating a bus and unable to immediately answer.

23.

Plaintiff requested of Johnson and Toombs that they stop contacting him via his personal cell phone, particularly during his off time and/or while he was driving.

24.

Plaintiff, unlike his female co-workers, was also subject to harassment in other areas of his employment.

25.

By way of example, on or about October 25, 2020, Plaintiff contacted Johnson informing her of a pre-scheduled vacation that would require Plaintiff to take off from November 12, 2020 to November 17, 2020.

26.

Plaintiff was unnecessarily scolded by Johnson regarding the time off, without cause, for the sole purpose of belittling and humiliating him.

27.

Johnson ultimately directed Plaintiff to contact Robinson and obtained approval from her for the time off.  Plaintiff took his vacation, as planned.

28.

Female co-workers who request time off are not subject to hostile and humiliating behavior as part of the process.

29.

On a separate occasion, on or about November 23, 2020, Plaintiff received a disturbing phone call from Robinson wherein she stated that Johnson came to her office and accused her of having a sexual relation with the Plaintiff.

30.

The accusation was made for the sole purpose of harassing and humiliating the Plaintiff. There was no basis for the accusation, as Robinson and Plaintiff maintained a strictly professional business relationship.

31.

The sexually charged allegation by Johnson unnecessarily made an uncomfortable work environment for both, Robinson and Plaintiff.

32.

No such accusations were made against female employees by Johnson nor Toombs.

33.

As Robinson was understandably deeply disturbed by the accusation, she reported the incident to Terona Shivers ("Shivers"), an administrative manager in the Human Resources department.

34.

As a result of Robinson's complaint, an investigation was commenced. An investigator contacted Plaintiff to get more information about Robinson's complaint.

35.

Plaintiff explained to the investigator that he and Robinson had a strictly professional relationship and that he was not present during the conversation between Robinson and Johnson.

36.

During the communication with the investigator, Plaintiff, also, discussed the repetitive, unnecessary, and harassing texts and emails that he received from Johnson and Toombs, since October 2020.  Plaintiff further explained that female employees are not subjected to these type of texts and communications from Johnson nor Toombs.

37.

Thereafter, a meeting was held on December 3, 2020, wherein Plaintiff, Robinson, Johnson, Toombs, Shivers, Quetin Hutchins ("Hutchins") – a Union Representative, and Mr. Shaw ("Shaw") – a Human Resources Representative were all in attendance.

38.

During the meeting, Plaintiff was praised by Toombs and Shivers regarding his work ethic.  Specifically, Toombs stated that she "needed more employees like [Plaintiff]."

39.

As part of the resolution reached at the meeting, Robinson and Toombs, both agreed to immediately stop the harassing texts to Plaintiff's personal cell phone and to contact him through the radios issued to employees by APS.  Plaintiff was optimistic that the resolution would end the harassing texts to his personal phone.

40.

After the meeting, Plaintiff was informed that Robinson was filing a formal grievance regarding the treatment she experienced at work.

41.

Plaintiff agreed to cooperate with the investigation and serve as a witness for Robinson, if necessary.

42.

The relief from the harassing text messages and communication was short lived. After only two weeks, Plaintiff again began receiving repetitive, unnecessary, and harassing messages to his personal cell phone.

43.

Text messages were sent to Plaintiff's personal phone by Toombs and Johnson, on some occasions, hours before his shift began and while he was operating the school bus.

44.

After receiving numerous harassing texts from Robinson and Toombs, Plaintiff contacted his union representative, Hutchins, to inform that Robinson and Toombs were continuing with their harassing communication.

45.

On or about December 15, 2021, Hutchins filed a grievance on behalf of Plaintiff, due to the discriminatory and retaliatory behavior Plaintiff continued to experience at work.

45.

As Robinson's and Plaintiff's separate grievances were pending, Toombs and Johnson increased their harassing behavior directed toward Plaintiff.

46.

Ultimately, on February 3, 2021, Plaintiff was directed to stop by the office. When Plaintiff arrived, he was handed a termination letter by Shivers and informed that he was being terminated.

47.

The reasons stated for the termination, namely "willful violation, incompetence, inefficient performance and insubordination," are mere pre-text.

48.

Throughout his employment, Plaintiff was never disciplined. None of the reasons proffered for the termination were communicated to the Plaintiff in any format, prior to the termination.

49.

To the contrary, Plaintiff received praise regarding his work ethic and job performance from Toombs, Shivers and Mr. Franklin, a Director at APS, Transportation Division.

50.

What is clear, is that Plaintiff was terminated after filing a grievance alleging sex discrimination based on his status as a male and for participating in Robinson's grievance investigation.

51.

Due to Defendant's conduct, Plaintiff has suffered emotional pain and suffering, mental anguish, humiliation and damage to his reputation.

52.

All of Defendant's unlawful actions were willful, malicious, deliberate and undertaken with the specific intent to harm Plaintiff and/or violate his federally protected rights. Additionally, or in the alternative, Defendant acted with reckless disregard toward Plaintiff and his federally protected rights.

## COUNT ONE
## SEX DISCRIMINATION OF TITLE VII

53.

Plaintiff incorporates by reference the allegation contained in paragraphs 1 through 52.

54.

The employment relationship between Plaintiff and APS is an employee to employer within the meaning of 42 U.S.C. § 2000e et seq., such that a cause of action exists where discrimination based on sex is alleged to be the causative agent of an adverse action directed to the employee by the employer.

55.

The discrimination to which Plaintiff was subjected to by APS based on sex was in violation of 42 U.S.C. § 2000e et seq., thus entitling him to all appropriate relief provided under the statute.

56.

APS's act of continuously sending repetitive, unnecessary, and harassing messages to Plaintiff's personal cell phone, in violation of its own policy, constituted discrimination based on sex such that APS's intentional actions adversely impacted Plaintiff's terms, conditions and privileges of employment.

57.

APS's act of continuously sending repetitive, unnecessary, and harassing messages to Plaintiff's personal cell phone, while he was operating its bus, thereby interfering with his ability to fully perform an essential task of his job constituted discrimination based on sex such that APS intentional actions adversely impacted Plaintiff's terms, conditions and privileges of employment.

58.

APS's act of accusing Plaintiff and Robinson of having a sexual relationship, without any basis, thereby intentionally causing an uncomfortable environment for Plaintiff and Robinson, constituted discrimination based on sex such that APS intentional actions adversely impacted Plaintiff's terms, conditions and privileges of employment.

59.

APS's failure to appropriately address Plaintiff's complaints of being subjected to disparate treatment based on sex constituted discrimination that adversely impacted Plaintiff's terms, conditions and privileges of employment.

60.

As a direct and proximate result of APS's intentional and unlawful conduct, which was intended to cause Plaintiff harm, and/or was committed with reckless disregard of the harm caused to Plaintiff, and derogation of his federally protected rights, Plaintiff has suffered and continues to suffer emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, danger to his reputation, and other past and future pecuniary losses.

61.

As a direct and proximate result of APS's unresponsive and inaction to Plaintiff's complaint concerning discrimination based on sex, Plaintiff has suffered and continues to suffer emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, danger to his reputation, and other past and future pecuniary losses.

62.

APS's intentional and illegal conduct entitles Plaintiff to compensatory damages and any and all other remedies available under Title VII.

## COUNT TWO
## RETALIATION IN VIOLATION OF TITLE VII

63.

Plaintiff incorporates by reference the allegation contained in paragraphs 1 through 62.

64.

Title VII makes it unlawful for an employer to retaliate against an employee based on an employee's complaint of discrimination.

65.

Defendant retaliated against Plaintiff when it terminated him without cause, as direct result of the grievance filed on Plaintiff's behalf alleging sex discrimination against Defendant.

66.

Defendant retaliated against Plaintiff when it terminated him without cause, as direct result of Plaintiff's willful participation in the investigation of Robinson's grievance of discrimination.

67.

As a direct and proximate result of Defendant's intentional and unlawful retaliatory conduct, Plaintiff has suffered lost wages and benefits of employment in an amount to be determined at trial.

68.

As a direct and proximate result of Defendant's intentional and unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, embarrassment, damage to his reputation, and other past and future pecuniary losses.

**COUNT THREE**
**PUNITIVE DAMAGES**

69.

Plaintiff incorporates by reference the allegation contained in paragraphs 1 through 68 as if fully set forth herein.

70.

Defendant's actions with respect to Plaintiff have shown willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care, thus entitling Plaintiff to an award of punitive damages in order to deter, punish, and penalize Defendant for and from such conduct in the future.

## COUNT FOUR
## ATTORNEYS FEES

71.

Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 70 as if fully set forth herein.

72.

Plaintiff is entitled to an award of attorney's fees and expenses of litigation on each and every cause of action alleged herein, as provided by statute and because Defendant has acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for:

1) General damages based on Defendant's conduct as alleged herein in an amount to be determined at trial;

2) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts in an amount to be determined at trial;

3) Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon in an amount to be determined at trial;

    4) Reasonable attorney's fees and expenses of litigation;

    5) Trial by jury as to all issues;

    6) Prejudgment interest at the rate allowed by law;

    7) Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

and

    8) And all other relief to which Plaintiff may be entitled.

Submitted this 28th day of June 2021.

**WATSON LAW LLC**

s/ A. Zakiya Watson-Caffe
A. Zakiya Watson-Caffe
GA Bar No.: 441773
800 Kennesaw Avenue, Suite 220
Marietta, Georgia 30060
Telephone: (404) 600-1771
Email: zak@zwatsonlaw.com

*Attorney for Plaintiff*